UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EBONE PORCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 CV |
| v. ) | |
| ) | Judge |
| UNIVERSITY OF ILLINOIS at ) | |
| CHICAGO, SCHOOL OF MEDICINE | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

Plaintiff, EBONE PORCH, by and through her attorneys, Calvita J. Frederick & Associates and complaining of the Defendant, responds to the following interrogatory submitted by the Defendants UNIVERSITY OF ILLINOIS at CHICAGO, SCHOOL OF MEDICINE (the "University" "Defendants"), as follows:

**JURISDICTION**

1. These claims arise under the ADA, and this Court has subject matter jurisdiction based on a federal question under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court also has jurisdiction pursuant to: (1) 42 U.S. C. § 2000a, providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA and (2) 28 U.S.C. § 1343 for any civil rights action authorized by law.

2. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 (a) and further relief pursuant to 28 U.S.C. § 2202.

3. Venue is proper in the District of Illinois in that acts of discrimination have taken place in this District and Plaintiff's permanent residence is within this District.

## PARTIES

4. Plaintiff, a permanent resident of Illinois, former medical student at University of Illinois at Chicago School of Medicine.

5. Defendant, University of Illinois at Chicago School of Medicine is one of the largest medical schools in the country, provides educational services in the City of Chicago, State of Illinois.

## FACTUAL ALLEGATIONS

6. Plaintiff permanent resident of Illinois and is a former student at University of Illinois at Chicago School of Medicine.

7. Plaintiff suffers from multiple disabilities, including but not limited to, Attention-Deficit/Hyperactivity Disorder, learning disabilities and generalized anxiety disorder.

8. Plaintiff has been evaluated by clinicians and has, at the recommendation of her clinicians, needed extended time testing accommodations while in school.

9. Plaintiff commenced her medical education at University of Illinois College of Medicine in August 2009.

10. In a letter dated October 4, 2018, Plaintiff was required to take and pass United States Medical Licensing Examination ("USMLE") Step 1 by April 6, 2019.

11. Plaintiff tendered a letter to begin the request for accommodations on October 5, 2018, asking for instructions on beginning the process to apply for accommodations, and again on October 9, 2018, and again inquired on October 23, 2018. Finally, Plaintiff was allowed to submit the Medical Student Disability and Accommodations documentation on November 2, 2018.

12. Plaintiff was unable to pass the USMLE by this deadline because Defendant did not notify her of the exam date, which was in March of 2019, with enough time for her to have six months before the scheduled examination to request extended time accommodations.

13. The documentation submitted in support of this request included the following: Letters from Porch's psychologist, psychiatrist and her family practitioner, all detailing her medical condition and advising that she required extra time to complete the examination due to her medical condition.

14. The documentation listed above substantially complies with the Defendant's written policy regarding requests for disability testing accommodations.

15. By way of letter addressed to the UIC Office of Access and Equity ("OAE") dated November 2, 2018, Plaintiff requested testing accommodations for the USMLE Step 1 to be administered in March of 2019. The OAE never issued a response to Plaintiff's request for accommodations.

16. Plaintiff then contacted Mr. Urosev, Dean of Academic Affairs, and Dr. Marth Halsey, Academic Specialist requesting assistance with the NBME Medical Testing Accommodations.

17. Plaintiff was then advised that the request for accommodations requires six full months and since the college had only granted Plaintiff five months to take the exam, there was not enough time to pursue the accommodations that Plaintiff required to succeed on the examination.

18. Plaintiff was then advised to study hard and od the best she could on the NBME Medical test.

19. The College of Medicine through Dean Curry was aware of Plaintiff's need for accommodations and had advised Plaintiff that she could and would receive assistance in requesting the accommodations.

20. The College of Medicine was also aware that the accommodations process required six full months for the completion and granting of the accommodations.

21. Nevertheless, the College of Medicine granted Plaintiff only five months to take and pass the test

22. Subsequent to the Defendant's second refusal to accommodate Plaintiff's disabilities, Plaintiff's medical school informed her that she could not advance in its M.D. degree program without taking and passing USMLE Step 1.

23. Plaintiff sat for USMLE Step 1, in March of 2019 without accommodations, and, as foreseen by her, she was unable to pass the exam because she did not have sufficient time to accurately read, comprehend, and complete the exam. Plaintiff also experienced significant anxiety that exacerbated the impacts of her cognitive impairments. Before

even walking into his examination room, Plaintiff knew from experience that she would be unable to complete the USMLE. Plaintiff found it very difficult to focus and comprehend what she was reading. She had to reread questions and responses multiple times in order to comprehend them. Plaintiff skipped over questions that would take her longer to read, but, in contrast to her experience on other exams where she had extended time, she did not have enough time on the USMLE to return to, read, and answer these skipped questions. As a consequence, Plaintiff rushed through test questions.

24. Because she had not passed USMLE Step 1, Plaintiff was dismissed from her medical degree program by way of letter dated April 26, 2019.

25. Plaintiff filed a Grievance of the College of Medicine's decision to dismiss her.

26. A final decision to deny Plaintiff's grievance was reached on October 4, 2019.

27. Plaintiff alleges that Defendant's reason for denial is speculative and violates the ADA as well as state and local laws and regulations.

28. ADA regulations state:

> "The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).
> "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).
>
> "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an

impairment "substantially limits" a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv).

"The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate." 29 C.F.R. § 1630.2(j)(1)(v).

"The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(1)(vi).

"An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

"An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment." 29 C.F.R. § 1630.2(j)(1)(viii).
"[I]n determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." 29 C.F.R. § 1630.2(j)(4)(i).

"Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of

> medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii).

> "In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population." 29 C.F.R. § 1630.2(j)(4)(iii)

> "[A]ny private entity offering an examination covered by this section must assure that - (i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability… the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's [impairment]." 28 C.F.R. § 36.309(b)(1)(i).

29. Defendant's denial of Plaintiff's reasonable and well documented request for accommodations is arbitrary, without basis in fact or in law, and is deliberately indifferent to Plaintiff's civil rights under the applicable laws.

USMLE Step 1

30. "The United States Medical Licensing Examination (USMLE) is a three-step examination for medical licensure in the United States and is sponsored by the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners(R) (NBME(R)). The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and disease and that constitute the basis of safe and effective patient care. Each of the three

Steps of the USMLE complements the others; no Step can stand alone in the assessment of readiness for medical licensure.

31. "Step 1 is a one-day examination. It is divided into seven 60-minute blocks and administered in one 8-hour testing session[.] The number of questions per block on a given examination form will vary but will not exceed 40. The total number of items on the overall examination form will not exceed 280."

32. The NBME develops USMLE Step 1 which is administered at various test sites and on various dates throughout the United States. The results of each student's scores are reported to that student's medical school.

33. Plaintiff must pass USMLE Step 1 in order to maintain her eligibility to remain in medical school. Passing USMLE Step 1 is a requirement for medical licensure in the United States and a failed attempt or poor performance on USMLE Step 1 can adversely impact Plaintiff's acceptance into a residency training program.

34. Plaintiff has already attempted USMLE Step 1 once, without accommodations, and failed because she was denied the extended time accommodations, she needed to complete the exam. If Plaintiff does not take the USMLE with the extended time test accommodation that she requested, which are necessary to best ensure her access to the USMLE, she will continue to be irreparably harmed because she will be denied an equal opportunity to complete her medical education and pursue a medical career.

35. The accommodation requested by Plaintiff is an accommodation that has been granted by the College of Medicine to other test-takers with disabilities in prior administrations of the USMLE and would not fundamentally alter the test.

36. Plaintiff is and will continue to be significantly harmed by Defendant's refusal to provide her the accommodations she needs so as to best ensure that the test results reflect that which the test is designed to measure rather than the effects of Plaintiff's disabilities.

37. USMLE Step 1 does not claim to measure one's speed of reading or information processing, it claims only to measure medical knowledge.

## FIRST CLAIM

**(Violation of the Americans with Disabilities Act, ("ADA") 42 U.S.C. §§ 12101 et seq.)**

38. Plaintiffs hereby repeat and reiterate the allegations contained in the preceding paragraphs 1-37 of this Complaint as if fully set forth herein.

39. Plaintiff is a person with a disability in that she experiences a physical or mental impairment, which substantially limits one or more major life activities, including but not limited to, reading, writing, concentrating, learning, working, taking tests, and the operation of the major bodily functions of the brain and neurological system. 42 U.S.C. § 12102 (2)(B). Because of her impairment she needs testing accommodations in order to take the USMLE.

40. Plaintiff meets all the eligibility criteria for taking the USMLE.

41. Title III of the ADA, which is enforced by the U.S. Department of Justice (hereinafter referred to as "the Department"), states in part, "It is discriminatory to fail to make reasonable modifications to policies, practices and procedures, when necessary, to provide goods and services to a person with a disability." 42 U.S.C. § 12182(b)(2)(A)(ii).

42. Title III regulations specifically provide that accommodating an individual with a disability may require the testing entity to change the length of the time for an exam and/or the manner in which the examination is given. 28 C.F.R. § 36.309 (b) (iii) (2).

43. NBME administers the USMLE, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

44. The ADA requires Defendant to offer these examinations in a manner accessible to persons with disabilities. 42 U.S.C. § 12189.

45. The Department regulations mandate that a private entity offering examinations modify its examinations as necessary to best ensure full and equal access to persons [*31] with disabilities, including through the provision of extra testing time to permit completion of such examinations. 28 C.F.R. §§ 36.309(b) & (c).

46. The Department's regulations prohibit NBME from administering the USMLE without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b) (1) (i).

47. Plaintiff requires testing accommodations to participate in a fair, full, and equal basis on the USMLE. The modifications that Plaintiff needs would not impose a fundamental alteration but rather, would allow her medical knowledge and abilities to be fairly and accurately measured.

48. Defendant has thus discriminated, and continues to discriminate, against Plaintiff on the basis of her disability by intentionally denying her an equal opportunity to demonstrate her medical knowledge and skill on the USMLE in violation of the ADA, specifically 42 U.S.C. § 12189.

49. Defendant's policies and practices violate Plaintiff's rights under the ADA. Defendant's discriminatory policies and practices include, but are not limited to, its failure to grant accommodations when Plaintiff submitted the requisite documentation, and failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations for Plaintiff's disability.

50. Plaintiff will be irreparably harmed if the Defendant continues its illegal refusal to provide her the test modifications specifically recommended by her clinicians, in that Plaintiff has been unable to pass the USMLE without extended time accommodations,

51. Plaintiff was dismissed from medical school because she was unable to pass the USMLE; requiring Plaintiff to take the UMSLE without sufficient accommodation puts her at distinct disadvantage given her disabilities; as a result of the dismissal, Plaintiff has experienced sleep disturbance, fatigue, muscle tension, and headaches.

52. As a result of the Defendants violations of the ADA, Plaintiff has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, pecuniary losses, and severe emotional distress.

53. The Defendant's conduct is a direct violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law. Defendant's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

54. Consequently, Plaintiff is entitled to injunctive relief and reasonable attorney's fees under the ADA, 42 U.S.C. § 12188.

WHEREFORE, Plaintiff EBONE PORCH, demands judgment against the Defendant, UNIVERSITY OF ILLINOIS at CHICAGO, SCHOOL OF MEDICINE as follows:

    A.    For retroactive placement to the position of medical student at the time of dismissal;

    B.    For an award in excess of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive damages, and other nonpecuniary damages and fringe benefits;

    C.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

    D.    For such other and further relief, as is just and equitable.

## SECOND CLAIM

### (Violation of Section 504 of the Rehabilitation Act of 1973)

55. Plaintiffs hereby repeat and reiterate the allegations contained in the preceding paragraphs 1-37 of this Complaint as if fully set forth herein.

56. By reason of the foregoing, Defendants discriminated against Plaintiff on account of her disability by denying Plaintiff testing accommodations and by failing to conduct an individualized assessment of whether Plaintiff could perform the essential functions of a medical student with or without a reasonable accommodation, all in violation of Section 504 of the Rehabilitation Act.

57. Section 504 provides that: "No otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

58. Defendant receives federal financial assistance including grants, loans and scholarships.

59. Section 504 require post-secondary educational institutions to provide academic adjustments or accommodations for qualified students with disabilities to ensure that an

institution's educational requirements "do not discriminate or have the effect of discriminating" against a qualified student.3 Under the regulations, an institution must provide "methods for evaluating the achievement of students who have a handicap that impairs sensory, manual, or speaking skills to ensure that the results of the evaluation represents the student's achievement in the course, rather than reflecting the student's impaired sensory, manual, or speaking skills," 34 C.F.R. § 104.44 (c) and provide auxiliary aids, such as "taped texts, interpreters . . . readers . . . and other similar services" for students with impaired sensory, manual, or speaking skills. 34 C.F.R. § 104.44(d)(2).

60. Defendants unlawfully discriminated against Plaintiff on the basis of a disability when they failed to provide Plaintiff with testing accommodations when they were aware that accommodations were necessary for Plaintiff to perform at her potential.

61. Plaintiff requested accommodations several times for extended time to take the USMLE Step 1 test.

62. As a result of Defendants' willful, knowing, and intentional discrimination, Plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

WHEREFORE, Plaintiff EBONE PORCH, demands judgment against the Defendant, UNIVERSITY OF ILLINOIS at CHICAGO, SCHOOL OF MEDICINE as follows:

    A.    For retroactive placement to the position of medical student at the time of dismissal;

    B.    For an award in excess of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to her career, emotional pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, punitive damages, and other nonpecuniary damages and fringe benefits;

      C.      For attorney's fees and costs of this suit, pursuant to applicable statute; and

      D.      For such other and further relief, as is just and equitable.

## THIRD CLAIM

## (Violation of 42 USC Section 1983)

63. Plaintiffs hereby repeat and reiterate the allegations contained in the preceding paragraphs 1-37 of this Complaint as if fully set forth herein.
64. Defendants, acting under color of state law deprived Plaintiff of her right to testing accommodations.
65. As a direct and proximate result of Defendants' violations under 42 U.S.C. § 1983 Plaintiff has suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.
66. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights."
67. Defendants, acting under color of state law, deprived PORCH of the same privileges as those provided to similarly situated employees outside of her protected class.
68. Defendants' decision to deprive PORCH of the same rights and privileges was based on Porch's race and disability.

69. As a result of Defendants' discriminatory conduct, Plaintiff has been damaged in her career and to her person and has otherwise suffered monetary damages.

70. Pursuant to 42 U.S.C. § 1983 Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the school dismissal. Additionally, Plaintiff is entitled to monetary damages arising from the unconstitutional actions of Defendants.

WHEREFORE, Plaintiff EBONE PORCH, demands judgment against the Defendant, UNIVERSITY OF ILLINOIS at CHICAGO, SCHOOL OF MEDICINE as follows:

    A.    For retroactive placement to the position of medical student at the time of dismissal;

    B.    For an award in excess of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive damages, and other nonpecuniary damages and fringe benefits;

    C.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

    D.    For such other and further relief, as is just and equitable.

## FOURTH CLAIM

**(Violation of Illinois Human Rights Act, 775 ILCS 5.)**

71. Plaintiffs hereby repeat and reiterate the allegations contained in the preceding paragraphs 1-37 of this Complaint as if fully set forth herein.

72. Due to considerations of judicial economy, convenience and fairness to litigants this Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367.

73. Illinois Human Rights Law (IHRA) ensures "that every individual within the state is afforded an equal opportunity to enjoy a full and productive life....without discrimination because of age, race...or disability" where disability is defined as "(a) physical, mental or medical impairment or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment." Plaintiff is an individual with a disability within the meaning of the law.

74. Defendant has discriminated, against Plaintiff on the basis of her disability by denying her an equal opportunity to demonstrate her medical knowledge and skills on the USMLE in violation of the IHRA.

75. As a result of Defendant violation of IHRA, Plaintiff has suffered great injury, including, but not limited to, delayed completion of her medical degree, lost employment opportunities, pecuniary losses, and severe emotional distress. As a result of the denial of accommodations Plaintiff has experienced sleep and appetite disturbance, fatigue, muscle tension, and headaches.

76. Plaintiff is entitled to injunctive relief and monetary relief under the IHRA.

    WHEREFORE, Plaintiff EBONE PORCH, demands judgment against the Defendant, UNIVERSITY OF ILLINOIS at CHICAGO, SCHOOL OF MEDICINE as follows:

A. For retroactive placement to the position of medical student at the time of dismissal;

B. For an award in excess of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive damages, and other nonpecuniary damages and fringe benefits;

C. For attorney's fees and costs of this suit, pursuant to applicable statute; and

D. For such other and further relief, as is just and equitable.

## FIFTH CLAIM

### (Declaratory Relief)

77. Plaintiffs hereby repeat and reiterate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

78. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contends that Defendant violated and continues to violate her rights under the ADA and IHRA. Based upon information and belief, Defendant denies these allegations, thus declaratory relief is necessary and appropriate.

79. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

WHEREFORE, Plaintiff prays for judgment as follows:

(a) An order compelling Defendant or those acting as agents for or in concert with it, to provide test accommodations to Plaintiff, by providing her with double extended time for all future tests.

(b) An order granting such other injunctive relief as may be appropriate;

(c) An order granting declaratory relief;

(d) Enter judgment against the Defendant awarding Plaintiff recovery of reasonable attorney's fees, costs and expenses incurred in pursuing her rights;

(e) Enter judgment against the Defendant awarding Plaintiff such compensatory damages as may be proven by Plaintiff and to which he is entitled; and

(f) Award for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

EBONE PORCH

By:    s/ Calvita J. Frederick
        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001
Calvita.Frederick@att.net