`IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EBONE PORCH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-3848 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| UNIVERSITY OF ILLINOIS at | ) | |
| CHICAGO, SCHOOL OF MEDICINE, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ebone Porch brings this action against Defendant Board of Trustees of the University of Illinois[1] ("Defendant" or the "University") alleging violations of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, the Illinois Human Rights Act, and constitutional violations pursuant to 42 U.S.C. § 1983. Before the Court is Defendant's motion to dismiss [9] all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion [9] is granted. Count III is dismissed with prejudice based on Plaintiff's concession that sovereign immunity bars a Section 1983 suit against Defendant. Count V also is dismissed with prejudice as a declaratory judgment is unnecessary and redundant in view of Counts I and II, which provide an adequate vehicle to pronounce any rights Plaintiff may have under the ADA and Rehabilitation Act vis-à-vis the named Defendant. In an abundance of caution, Counts I and II are dismissed without prejudice and with leave to file a motion for leave to file an amended complaint no later than September 1,

---

[1] Plaintiff names "University of Illinois at Chicago, School of Medicine" as the Defendant, but any actions against the University of Illinois are to be brought against the Board of Trustees of the University of Illinois. See 110 Ill. Comp. Stat. 305/1; see also *Wilson v. Integrated Med. Sys., Inc.*, 2016 WL 4734362, at *1 n.2 (N.D. Ill. Sept. 12, 2016).

2022, if Plaintiff believes an amended complaint is maintainable consistent with this opinion and Federal Rule of Civil Procedure 11. If no motion for leave to amend is filed by that date, or if any such motion is denied, the dismissal of Counts I and II will convert to with prejudice. In view of the dismissal of all of Plaintiff's federal claims, the Court is inclined to decline supplemental jurisdiction over the state law claim set out in Count IV, but will not formally dismiss that claim without prejudice until it can rule on a motion for leave to amend the federal claims.

I.    Background[2]

Plaintiff Ebone Porch is a permanent resident of Illinois and a former medical student at the University of Illinois at Chicago School of Medicine. [1 at ¶ 4, 6.] The University of Illinois at Chicago School of Medicine, is one of the largest medical schools in the country. [*Id.* at ¶ 5.] Plaintiff enrolled at the University in August 2009. [*Id.* at ¶ 9.] Plaintiff suffers from multiple disabilities, including Attention-Deficit/Hyperactivity Disorder, learning disabilities, and generalized anxiety disorder. [*Id.* at ¶ 7.] Plaintiff has been evaluated by clinicians who have recommended that she receive extended time testing accommodations while in school. [*Id.* at ¶ 8.]

Plaintiff's claims arise from her obligation to complete the United States Medical Licensing Examination (USMLE), which is a three-step examination for medical licensure in the United States. [1 at ¶ 30.] The USMLE is sponsored by the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME). [*Id.*] The test is designed to assess a physician's ability to apply knowledge, concepts, and principles and to demonstrate fundamental patient-centered skills necessary to perform safe and effective patient care. [*Id.*] Anyone seeking to obtain a medical license in the United States must pass all three steps of the

---

[2] For purposes of Defendant's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint [1] and draws all reasonable inferences in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

examination; no step can stand alone in the assessment of readiness. [*Id.*]

The NBME develops Step 1 of the USMLE, which is administered on a number of dates throughout the year at a variety of test sites throughout the United States. [1 at ¶ 32.] Step 1 is a one-day examination that is divided into seven 60-minute blocks during one 8-hour testing session. [*Id.* at ¶ 31.] The number of questions per 60-minute testing block varies but will not exceed 40, and the total number of questions for the overall examination will not exceed 280. [*Id.*] Test scores are reported to each student's medical school. [*Id.* at ¶ 32.] Plaintiff must pass Step 1 to maintain her eligibility for medical school, and poor performance on the examination may adversely affect Plaintiff's chances of being accepted into a residency training program. [*Id.* at ¶ 33.]

In a letter dated October 4, 2018, Plaintiff was informed that she needed to take and pass the Step 1 by April 6, 2019. [1 at ¶ 10.] The following day, October 5, 2018, Plaintiff "tendered a letter to begin the request for accommodations." [*Id.* at ¶ 11.] In her letter, she requested that Defendant provide her instructions on applying for and obtaining testing accommodations. [*Id.*] According to the complaint, Plaintiff requested instructions again on October 9, 2018, and again on October 23, 2018. [*Id.*] Plaintiff claims that she was unable to pass the USMLE Step 1 by the April 6, 2019 deadline "because Defendant did not notify her of the exam date, which was in March of 2019, with enough time for her to have six months before the scheduled examination to request extended time accommodations." [*Id.* at ¶ 12.]

On November 2, 2018, "[f]inally, Plaintiff was allowed to submit the Medical Student Disability and Accommodations documentation" [*id.* at ¶ 11], which she did by letter addressed to the UIC Office of Access and Equity (OAE) requesting "testing accommodations for the USMLE Step 1 to be administered in March of 2019" [*id.* at ¶ 15]. Plaintiff submitted letters from her psychologist, psychiatrist, and family practitioner, all of whom supported her request for extra time

3

to complete the examination due to her medical conditions. [*Id.* at ¶ 13.] Plaintiff asserts that the submitted documentation "substantially complies with the Defendant's written policy regarding requests for disability testing accommodations." [*Id.* at ¶ 14.] Plaintiff states that the OAE never responded to her November 2, 2018 letter. [*Id.* at ¶ 15.]

According to the complaint, Plaintiff then contacted Mr. Urosev, Dean of Academic Affairs, and Dr. Marth Halsey, Academic Specialist, to request assistance with obtaining accommodations for the USMLE.[3] [1 at ¶ 16.] Plaintiff was informed that "the request for accommodations requires six full months and since the college had only granted Plaintiff five months to take the exam, there was not enough time to pursue the accommodations that Plaintiff required to succeed on the examination." [*Id.* at ¶ 17.] Plaintiff "was advised to study hard and [do] the best she could" on the examination. [*Id*. at ¶ 18.] Plaintiff asserts that the "College of Medicine through Dean Curry was aware of Plaintiff's need for accommodations" and had informed her of her ability to obtain them, and "was also aware that the accommodations process required six full months for the completion and granting of the accommodations," yet "granted Plaintiff only five months to take and pass the test." [1 at ¶¶ 19–21.]

Plaintiff sat for the exam in March of 2019 without accommodations and was unable to pass. [1 at ¶ 23.] She claims that she failed the examination "because she did not have sufficient time to accurately read, comprehend, and complete the exam," she "experienced significant anxiety that exacerbated the impacts of her cognitive impairments" before the examination even began, and ultimately "rushed through test questions" because of her difficulties focusing. [*Id.*] Because Plaintiff did not pass Step 1 of the USMLE, she was dismissed from her medical program by letter dated April 26, 2019. [*Id.* at ¶ 24.] She filed a grievance with Defendant challenging the

---

[3] Plaintiff does not specify in her complaint exactly when she contacted Urosev and Halsey, nor when any of the following events took place.

4

school's decision to dismiss her, but her grievance was denied on October 4, 2019. [*Id.* at ¶¶ 25–26.]

Plaintiff initiated this action on July 20, 2021, filing a five-count complaint against UIC Medical School [1]. Plaintiff asserts (1) failure to accommodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. (Count I); (2) disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973 (Count II); (3) constitutional deprivation pursuant to 42 U.S.C. § 1983 (Count III); and (4) disability discrimination in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5 (Count IV).[4] Plaintiff seeks injunctive relief in the form of "retroactive placement to the position of medical student at the time of dismissal," compensatory damages, and attorney's fees. Defendant moves to dismiss with prejudice all claims in the complaint [9].

## II.     Legal Standard

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action,

---

[4] The complaint also purports to assert a fifth claim of "declaratory relief" [1 at 18], which the Court finds unnecessary and redundant for the reasons stated above.

supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).[5]

### III. Analysis

#### A. Count I: ADA Discrimination

Another judge in this circuit dealt with a similar set of allegations in *Saavedra v. Bd. Of Regents of University of Wisconsin System*, 982 F.Supp.2d 879 (N.D. Ill. Oct. 9, 2013). Plaintiff in that case was a second-year resident physician at the University of Wisconsin–Madison ("UW–Madison") School of Medicine and Public Health who suffered from dyslexia, ADHD, and a learning disability. In order to continue his residency, the plaintiff needed to pass Step 3 of the USMLE. Plaintiff failed the test on his first two attempts, and on July 28, 2006, he was informed that his employment contract would terminate on September 30, 2006, but also that he would be reinstated if he passed Step 3 by December 1, 2006.

---

[5] Defendant moves for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, but also asserts that "the Court lacks subject matter jurisdiction over Counts I, III, and IV," an objection which is typically raised pursuant to Rule 12(b)(1). Defendant properly filed its motion pursuant to 12(b)(6), but throughout its briefing fails to properly distinguish between "two sometimes confused or conflated concepts: federal-court 'subject matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006). In *Arbaugh*, the Supreme Court determined that the issue of whether a party is an "employer" under Title VII was an element of the party's claim rather than a jurisdictional requirement. The Court reviewed the definition of employer under the statute, 42 U.S.C. § 2000e(b), and concluded that the question of whether an employer falls within its definition was a merit-based determination, explaining that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516. Similarly, the ADA's definition of a "private entity" under 42 U.S.C. § 12181 suggests that the issue of whether Defendant is subject to the provisions of Title III is an element of Plaintiff's claim—not a question of jurisdiction. *Cf. Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015) (issue of "whether the Girl Scouts receive federal financial assistance" to determine whether they were covered by the Rehabilitation Act "has no effect on subject-matter jurisdiction and that federal-question jurisdiction under 28 U.S.C. § 1331 is proper"). In view of the foregoing, the Court will address all of Defendant's arguments under Rule 12(b)(6).

Plaintiff petitioned the NBME for additional test-taking time to accommodate his disabilities. Plaintiff was unable to pass Step 3 before the December 1 deadline, but ultimately was successful after retaking the test with extra time on May 3, 2007. He applied for reinstatement to his residency but was turned down. According to his complaint, the program director informed him that he could not return to the program because he did not pass the examination on time, and stated: "our Program just doesn't have the resources to accommodate you or work with you with extra time." 982 F.Supp.2d at 882.

Plaintiff filed suit in federal court against the Board of Regents of the University of Wisconsin System, the Interim Chancellor of U–W Madison, and the Dean of the UW–Madison School of Medicine and Public Health. Plaintiff claimed (in relevant part) employment discrimination under the Rehabilitation Act of 1973 § 504 alleging that defendants denied his restatement application because they refused to provide reasonable accommodation for his disabilities.[6] Defendants filed a motion to dismiss which the court granted, finding that plaintiff had failed to state a plausible claim for relief under § 504. The court explained:

> The problem with plaintiff's claim is that he did not ask defendants to accommodate his disabilities. He says he needed extra time during his medical licensing exam because his dyslexia, ADHD, and learning disability prevented him from reading all of the exam questions in the time normally allotted. But he did not ask defendants for this accommodation and properly so because defendants had no power to grant it. Only the NBME could give plaintiff more time to take his exam[.]

*Id.* at 884.

The same reasoning applies here, and Plaintiff thus fails to state a claim for discrimination under the ADA. In fact, Plaintiff's claim suffers from two fatal defects. First, as Defendant argues, Plaintiff asserts her claim under Title III of the ADA, which is the wrong vehicle here. The ADA

---

[6] It is well established that "discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, with one exception related to causation that is not relevant here." *Bowers v. Dart*, 1 F.4th 513, 519 (7th Cir. 2021).

7

was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1). The Act "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." "Title III of the ADA only applies to prohibit discrimination by private entities, and not by public entities." *Naperville Smart Meter Awareness v. City of Naperville*, 69 F.Supp.3d 830, 843 (N.D. Ill. 2014).

Plaintiff emphatically brings her claim under Title III. [See 14 at 2 (clarifying that "Plaintiff pleaded her claim under Title III").] But Defendant is a state agency in Illinois. See *Mays Gillon v. Bd. Of Trustees of Univ. of Ill.*, 2018 WL 905506, at *4 (N.D. Ill. Feb. 15, 2018) ("[T]he University of Illinois is a state agency."). Thus, there is a mismatch between the named Defendant and the relief potentially available to Plaintiff under the section of the ADA she invokes. Plaintiff must either (a) assert a Title II claim against the University,[7] or (b) pursue her Title III claim against a *private* entity. Compare *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1012 (N.D. Ill. 2002) ("The [NBME], as a private entity offering examinations related to licensing, is subject to the ADA under Section 12189") with *Block ex rel. Block v. Rockford Pub. Sch. Dist. 205*, 2001 WL 1195757, at *1 (N.D. Ill. Oct. 10, 2001) (noting that public schools "are quintessential 'public entities," making Title II the exclusive means of enforcing [plaintiffs'] rights under the ADA"). Plaintiff's attempt to assert a Title III claim against a *public* entity fails as a matter of law.

---

[7] As Defendant argues in its opening brief [see 10, at 4-5], Plaintiff may face a different set of obstacles if she were to assert a claim under Title II against the University as an entity—including sovereign immunity—but the Court need not explore that scenario here.

8

Plaintiff attempts to avoid this impediment by arguing that Defendant may have violated Title III "through the NBME." [14 at 3.] Indeed, Plaintiff maintains that the Court should not dismiss Count I because "[w]hether Defendant would be subject to liability for causing Plaintiff to take the exam administered by the NBME, an entity covered under Title III, remains an issue of fact and question of law not to be decided at this stage." [*Id.*] But this theory, too, is flawed. As Plaintiff acknowledges in her complaint, the NBME "sponsor[s]," "develops," and "administers" the USMLE. [1 at ¶¶ 30, 32, 43.] Plaintiff has not plausibly alleged that *Defendant* was responsible for failing to accommodate her disabilities. In fact, she states that ADA regulations "prohibit NBME from administering the USMLE without ensuring that the scores reported 'accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability].'" [1 at ¶ 46 (quoting 28 C.F.R. § 36.309(b)(1)(i).] In this regard, Plaintiff is exactly right: Title III of the ADA requires the *NBME* to "offer [licensing] examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. The University has no such obligations because it does not "sponsor" "develop" or "administer" the USMLE.

The cases to which Plaintiff cites also work against her [see 14 at 3–4], because those cases deal with issues of vicarious liability in the context of an employer-municipality. Black's Law Dictionary defines vicarious liability as "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties." Vicarious Liability, BLACK'S LAW DICTIONARY (11th ed. 2019); see also *Novak v. Hall*, 139 F.Supp.3d 901, 909 (N.D. Ill. 2015) (because Cook County is considered a "public entity" under the ADA, "the court will assume that as Judges Hall and Evans

9

are employed by the County, Cook County is vicariously liable for any violations of the ADA and Rehabilitation Act committed by them"). No supervisory relationship exists between the NBME and the University. Rather, the University predicates continued enrollment on the USMLE exams, which are run by the NBME. It is "well within" the University's "authority to decide that in order for it to adhere to the demanding standards of a medical school responsible for producing competent physicians, it needed to require plaintiff to pass Step 1," *Powell v. Nat'l Bd. Of Med. Examiners*, 364 F.3d 79, 88 (2d Cir. 2004), and that does not establish a supervisory relationship between Defendant and the NBME.[8]

### B. Count II: Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). As the Court noted above, the same standards govern the Rehabilitation Act and the ADA. See *Bowers v. Dart*, 1 F.4th 513, 519 (7th Cir. 2021). Under both statutes, Plaintiff must demonstrate "that [she] is a qualified individual with a disability, and that [she] was denied access to a service, program or activity because of [her] disability." *Id.*

Plaintiff's Rehabilitation Act claim fails for the same reason as her ADA claim: She has not alleged any facts that suggest that Defendant is responsible for the injury she asserts. The crux of Plaintiff's Count II is the same as Count I. The complaint states: "Defendants unlawfully discriminated against Plaintiff on the basis of a disability when they failed to provide Plaintiff with

---

[8] It is not impossible that events giving rise to an ADA claim simultaneously implicate Titles II and III Act. The Seventh Circuit acknowledged such a possibility in *Ashby v. Warrick Cnty Sch. Corp.*, 908 F.3d 225, 233 (7th Cir. 2018), explaining that "when public and private entities act jointly, such as when a municipality and a private company jointly work to build a new stadium, both Title II and Title III may be implicated." The allegations in the complaint do not suggest (nor does Plaintiff argue) that such a dynamic exists here.

10

testing accommodations when they were aware that accommodations were necessary for Plaintiff to perform at her potential." [1 at ¶ 60.] But as explained above, the complaint does not plausibly allege any facts to support her theory that the University—rather than the NBME—failed to accommodate her. See *Saavedra*, 982 F.Supp.2d at 884; see also *Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F. App'x 909, 920 (10th Cir. 2013) (affirming dismissal of medical student's ADA and Rehabilitation Act claims against the University in part because "[i]nsofar as [plaintiff] needed an accommodation, it would have been in the area of taking the examinations that *the Board* administered—examinations that are not under the control or purview of UNM").

Because Count II of the complaint also is dismissed, the Court need not address Defendant's statute of limitations argument [see 10, at 7-8]. See *Amin Ijbara Equity Corporation v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) ("A limitations defense is not often resolved on a Rule 12(b)(6) motion because a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations" (citations omitted)). With that said, it is worth noting the observation of another judge in this Circuit that the notion that a disability discrimination claim accrues on the date of the denial of the plaintiff's appeal is "squarely foreclosed by Seventh Circuit precedent." *Cordova v. Univ. of Notre Dame Du Lac*, 936 F. Supp. 2d 1003, 1011 (N.D. Ind. 2013) (citing *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 553 (7th Cir. 1996) ("internal appeals are not part of the ADA statutory procedure and do not toll the time for filing suit"). Thus, unless the law has changed, Defendant's statute of limitations argument appears to be strong.

C.     Count III: 42 U.S.C. § 1983

Plaintiff concedes [see 14, at 4] that her claim under 42 U.S.C. § 1983 fails as a matter of law. See *Kaimowitz v. Bd. of Trustees of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991) ("Because

11

this Court has determined in previous § 1983 actions that a state university is an alter ego of the state, * * * it follows that a state university is not a person within the meaning of § 1983 and therefore not subject to suits brought under § 1983."). Count III is thus dismissed with prejudice.

### D.     Count IV: Illinois Human Rights Act

Finally, Defendant moves to dismiss Count IV—violation of the IHRA—because Plaintiff failed to exhaust her administrative remedies prior to filing this action. The Court agrees.

The IHRA vests the Illinois Human Rights Commission "with exclusive authority to hear complaints seeking redress for alleged violations under the Act." *Swidnicki v. Brunswick Corp.*, 23 F.Supp.3d 921, 929 (N.D. Ill. 2014). "Judicial review of such claims is available only after the Commission has issued a final order on a complaint." *Id.* Plaintiff has not alleged any facts to show that she brought her claim before the Commission before filing this action in federal court.

Moreover, even if Plaintiff had exhausted her remedies before the Commission, the Court would decline to exercise supplemental jurisdiction over this claim in view of the disposition of all of Plaintiff's federal claims above. To be sure, 28 U.S.C. § 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims" arising from the same nucleus of facts. 28 U.S.C. § 1367(a). However, the statute also provides that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." § 1367(c). It is well settled in the Seventh Circuit that "[a] court that resolves all federal claims before trial normally should dismiss supplemental claims without prejudice." *Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2002). Following the usual practice in our Circuit, the Court is not inclined to retain jurisdiction over her IHRA claim absent a viable federal claim.

**IV.     Conclusion**

For the reasons stated above, Defendant's motion to dismiss [9] is granted. Count III is dismissed with prejudice based on Plaintiff's concession that sovereign immunity bars a Section 1983 suit against Defendant. Count V also is dismissed with prejudice as a declaratory judgment is unnecessary and redundant in view of Counts I and II, which provide an adequate vehicle to pronounce any rights Plaintiff may have under the ADA and Rehabilitation Act vis-à-vis the named Defendant. In an abundance of caution and to provide Plaintiff an avenue for relief should she discern a viable federal claim, Counts I and II are dismissed without prejudice and with leave to file a motion for leave to file an amended complaint no later than September 1, 2022, if Plaintiff believes an amended complaint can be maintained consistent with this opinion and Federal Rule of Civil Procedure 11. If no motion for leave to amend is filed by that date, or if any such motion is denied, the dismissal of Counts I and II will convert to with prejudice. In view of the dismissal of all of Plaintiff's federal claims, the Court is inclined to decline supplemental jurisdiction over the state law claim set out in Count IV but will not formally dismiss that claim without prejudice until it can rule on a motion for leave to amend the federal claims. In the event that Plaintiff has no viable federal claim against Defendant, Count IV will be dismissed without prejudice. See 735 ILCS 5/13-217.

Dated: August 2, 2022

_____
Robert M. Dow, Jr.
United States District Judge