**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EBONE PORCH,                                             )

                                                             )

        Plaintiff,                                   )

                                                          )          Case No. 21 CV 3848

        v.                                              )

                                                          )          Judge Steven C. Seeger

UNIVERSITY OF ILLINOIS at                               )
CHICAGO, SCHOOL OF MEDICINE,

                                                            )

        Defendants.                                  )

**MOTION TO ALTER OR AMEND JUDGMENT**
**TABLE OF CONTENTS**

**FACTUAL AND PROCEDURAL BACKGROUND** ……………………………… p. 1

**ARGUMENT** …………………………………………………………..p. 5

**I. The Standard for Rule 59(e) motions** ……………………………………p.5

*Hew v. Gen. Med., PC*, Case No. 18-cv-2177-RJD, 3-4 (S.D. Ill. Sep. 21, 2020)…………..p. 6

**II. The redline of the Amended Complaint does not reflect the changes made to the original Complaint** ………………………………………………………..p. 6

**III. Plaintiff's case and the facts in the Complaint** ……………………………… p. 8

*Wilburn v. Indiana*, Case No. 3:17-cv-059 JD, 7-8 (N.D. Ind. Jun. 9, 2020) ……………… p.10

**IV. The inclusion of individual defendants was necessary and required by law** ……… p. 18

*Doe v. Board of Trustees of University of Illinois*, 429 F. Supp. 2d 930, 940 n.2 (N.D. Ill. 2006) ………………………………………………………………p. 19 and 20

**V. The standard for Motions for Leave to File an Amended Complaint** ……………… p. 23

*Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ……………………………………..p. 23

*In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004) …………………………………… p. 24

**VI. The reference to Plaintiff's Reply in the Court's Order of December 20, 2022, shows that this Court was aware of the exact and true allegations brought forth by Plaintiff. The decision to ignore them was deliberate …………………………………………………...  p. 25**

*Johnson v. Sales Consultants, Inc.*, 61 F.R.D. 369, 371 (N.D. Ill. 1973). …………………...p. 27

*McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931 (7th Cir. 2018). ………………………p. 27

*Murphy v. White Hen Pantry Co*., 691 F.2d 350, 353 (7th Cir. 1982)………………………. p. 27

CONCLUSION……………………………………………………………………………….p. 28

**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EBONE PORCH,                          )

                                   )

       Plaintiff,                )

                                   )    Case No. 21 CV

       v.                      )

                                   )    Judge Steven C. Seeger

UNIVERSITY OF ILLINOIS at      )
CHICAGO, SCHOOL OF MEDICINE,

                                   )

       Defendants.         )

**MOTION TO ALTER OR AMEND JUDGMENT**

Plaintiff, by and trough the undersigned attorney, pursuant to Federal Rule of Civil

Procedure 59(e), brings this Motion and respectfully asks this Court to alter or amend its final

Judgement of December 21, 2022, and to grant Plaintiff's Motion for Leave to File an Amended

Complaint, because the final Judgment is grounded in manifest errors of both facts and law.

In support thereof, Plaintiff states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  Originally, this action was presided by Honorable Judge Robert M. Dow Jr. who left this

    District Court to serve as Counselor to the Chief Justice of the United States.

2.  Thereafter, the case was assigned to this Honorable Court.

1

3. On August 3, 2022, Honorable Judge Dow dismissed Plaintiff's original ADA and Rehabilitation claims without prejudice with leave to File a Motion for Leave to File an Amended Complaint.

4. Plaintiff filed a Motion for Leave to File an Amended Complaint with accompanying Amended Complaint on September 1, 2022.

5. Before this Court issued a ruling on Plaintiff's Motion for Leave to File an Amended Complaint, Defendant filed a Response to Plaintiff's Motion to Dismiss the Amended Complaint on September 22, 2022.

6. On October 7, 2022, in accordance with the Court's Order, Plaintiff promptly filed her Reply showing how and why Defendant's premature Motion to Dismiss should have been denied in its entirety.

7. This Court's Standing Order requires a redline whenever a party seeks to amend a complaint. (Standing Order at Amended Complaint). The rationale for the Standing Order is that "a redline promotes transparency and makes it easy for the parties and the Court to *spot any changes*." [Dkt. # 27 Nov 7, 2022]

8. Plaintiff did file a redline on November 9, 2022, after counsel for Plaintiff exchanged a few communications with the Court notifying the Court that she was having difficulties with the redline because she is not tech-savy.

9. As Plaintiff shows in the ARGUMENT below, due to the _technical_ difficulties that counsel encountered in the implementation of the redline Order, the filed redline did not capture any

and all changes and, more importantly, it did not capture the critically relevant changes in the Amended Complaint.

10. On December 20, 2022, this Honorable Court issued an Order denying Plaintiff's Motion to File an Amended Complaint.

11. As a rationale for the ruling, this Court stated that Plaintiff had sued the wrong Defendant, that the NBME is the right Defendant in this action and in her Amended Complaint Plaintiff did not add the NMBE as a Defendant and did not plausibly allege any facts to support the theory that UIC, instead of the NBME, failed to accommodate her. [DKT' # 29, Dec. 20, 2022].

12. In addition, this Court added three comments in its Order that are of particular relevance to this Motion, (*see* ARGUMENT below):

   a) "The case is about accommodations when taking a medical exam. Porch sued Defendant University of Illinois at Chicago School of Medicine ("UIC"), her former medical school, alleging that it failed to provide her with the medical accommodations she needed to sit for Step 1 of the United States Medical Licensing Exam (USMLE). *Id.* at 2." [This Court Order of Dec. 20, 2022, at p. 1, where "*Id. at 2*" refers to Judge Dow's Memorandum and Order of August 3, 2022, and Judge Dow's reading and/or interpretation of the Original Complaint, not Plaintiff's Amended Complaint];

   b) "Adding UIC officials as defendants couldn't solve the problem. UIC is already here, so adding individuals from UIC in their official capacities does not change anything.

UIC is the wrong entity. And suing officials from the wrong entity is still wrong." (*Id.* at p. 6); and

c)   "Finally, Porch asserts in her reply brief (which isn't a fertile ground for new arguments, so the argument is waived) that UIC: "instructs and requires the students with disabilities to go through [it] when they apply for the USMLE accommodations." *See* Pl.'s Reply to Mtn. for Leave to File Am. Cplt., at 3 (Dkt. No. [21]) (emphasis removed). However, this allegation is noticeably absent from the proposed amended complaint. The proposed pleading is what matters, not the gloss in a brief. And in any event, the amended complaint does not allege UIC had the authority to grant a disability accommodation." (*Id.* at p. 7).

13. Respectfully, the Court is greatly mistaken on both the facts and the law that applies to Plaintiff's Amended Complaint.

14. In the paragraphs that follow, Plaintiff illustrates *how and why* the Court is mistaken on the facts of this action and *how* the Court misapplied the law in this case.

15. *Ipso facto,* in turn, that process highlights all the reasons why this Court could and should be reversed on appeal.

16. Before Plaintiff's Counsel is accused of disrespectful conduct towards the Court, Plaintiff and the undersigned would like to stress that neither this Plaintiff nor her counsel have any animosity towards this Court. However, Plaintiff has the right to discuss and bring to the attention of this Court the confusion, misunderstanding, and/or errors that led to this Court's Order of Dec. 20, 2022, so that the Court will have an opportunity to correct its ruling. In the

alternative, and in addition, the Court must understand that Plaintiff must preserve the record

for the appeal as any argument not raised at this stage might be considered waived for

purpose of appeal and the only correct manner to preserve the record is to state clearly where

and how this Court was mistaken and/or deliberately chose to disregard the evidence in the

record.

## ARGUMENT

### I.     The Standard for Rule 59(e) motions.

Fed. R. Civ. P. 59(e) reads: "**(e)** MOTION TO ALTER OR AMEND A JUDGMENT. A

motion to alter or amend a judgment must be filed no later than 28 days after the entry of the

judgment." (28 APPENDIX U.S.C. § 59" Fed. R. Civ. P. 59.)

> "A motion for reconsideration filed within 28 days of the final judgment is
>
> considered under Federal Rule of Civil Procedure 59(e). *Carter v. City of*
>
> *Alton*, 922 F.3d 824, 826, n. 1 (7th Cir. 2019). A motion to alter or amend
>
> judgment pursuant to Rule 59(e) may be granted if there is newly discovered
>
> evidence, or if the Court made a manifest error of law or fact. *Moro v. Shell Oil*
>
> *Co.*, 91 F.3d 872, 876 (7th Cir. 1992) (*citing Russell v. Delco Remy Div. of*
>
> *General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)).
>
> ….
>
> Rule 59(e) allows the Court to correct errors in order to avoid unnecessary
>
> appellate procedures. *Id*. However, "the rule...certainly does not allow a party to
>
> introduce new evidence or advance arguments that could and should have been

presented to the district court prior to the judgment. *Id.* (*citing LB Credit*

*Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Litigants

should not consider the district court's opinions to be "first drafts" that can be

revised without good cause. *A&C Construction & Installation. Co. WLL v. Zurich*

*American Ins. Co., et al.*, 963 F.3d 705, 710 (7th Cir. 2020) (*citing Quaker Alloy*

*Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

*Hew v. Gen. Med., PC*, Case No. 18-cv-2177-RJD, 3-4 (S.D. Ill. Sep. 21, 2020).

Here, Plaintiff brings this Motion within the 28 days of the final judgment and does not

introduce any new evidence or advances any new arguments. She simply shows all the relevant

changes that Plaintiff did include in her Amended Complaint that – due to technical difficulties  -

were not necessarily reflected in the redline, and/or all the evidence that this Court did not

mention in its Order of Dec. 20, 2022, or inadvertently overlooked. Plaintiff also illustrates two

critical principles of law – very clearly included in the Amended Complaint by way of footnotes

- that this Court missed in reference to the individual defendants added in the Amended

Complaint. Finally, Plaintiff discusses the exact portion of the Order that unquestionably shows

that this Court disregarded Plaintiff's legal theory of the case and allegations or was merely

confused by an inaccurate redline and/or a cursory reading of the material before the Court.

## II.      The redline of the Amended Complaint does not reflect the changes made to the
##          original Complaint.

The undersigned followed the instructions she received from the Court regarding the redline -

to the letter - but the redline ended up capturing only very few changes and certainly not all the

relevant changes from the original Complaint to the Amended Complaint, for the following reasons:

a) The undersigned has several associates that work with her.

b) The original Complaint was written by one associate.

c) The Amended Complaint was written by another associate, not the same attorney that wrote the original Complaint.

d) Whenever this second attorney gets assignments that require modifying the work done by others, she finds it easier to start the assignment de novo. She does not work on the old file because she finds it confusing to work on the old file. Consequently, a redline applied to her work only reflects the edits this second associate makes to her own initial drafts, not the old, original file.

e) In addition, at the time this second attorney worked on the Amended Complaint, the case was assigned to Honorable Judge Dow who did not have a Standing Order requiring redlines for Amended Complaints. Therefore, the second associate did not know it was important to keep track of the differences or changes between the original Complaint and the Amended Complaint.

f)  When the undersigned prepared the redline of the Amended Complaint, she did not realize that the second associate had written the Amended Complaint from scratch using a file that had no electronic connection to the file of the original Complaint and therefore a redline of the Amended Complaint would have only reflected the very latest changes

the second attorney made to her own draft of the Amended Complaint as opposed to the redline capturing the changes from the original Complaint to the Amended Complaint.

g) And, again, all of this happened because nobody in the undersigned's office is particularly tech-savvy.

Therefore, to the extent this Court based its decision on the redline of the Amended Complaint, this Court inevitably and unintentionally missed the relevant changes made to the original Complaint.

However, as Plaintiff illustrates in the paragraphs that follow, a redline that did not capture the changes from the original Complaint to the Amended Complaint is only part of the several problems that afflict this Court's Order of December 20, 2022.

### III.   Plaintiff's case and the facts in the Complaint.

This Court's Order of Dec. 20, 2022, is based on the false assumption that this "case is about accommodations when taking a medical exam. Porch sued Defendant University of Illinois at Chicago School of medicine ("UIC"), her former medical school, alleging that it failed to provide her with the medical accommodations she needed to sit for Step 1 of the United States Medical Licensing Exam (USMLE)." (This Court's Order of Dec 20, 2022, at p. 1, *see also* paragraph 11(a) supra).

This case is not about UIC failing to provide Ms. Porch with the accommodations she needed to sit for Step 1 of the USMLE. UIC does not have the power to grant and/or provide those accommodations because UIC does not administer the test.

What UIC administers, however, and has full autonomous control of, is:

8

a) the processing of the UIC students' requests for accommodations for the STEP exams which must pass through the UIC Office of Access and Equity ("OAE") before such requests are submitted to the NMBE for evaluation;

b) the process to maintain a student enrolled in its medical program or terminate a student from its medical program;

c) the power to impose non-negotiable conditions that a student must satisfy to continue her enrollment in the medical program at UIC; and

d) the timing of UIC Board's decisions and the timing of UIC's communications to the students.

All of those are facts implied in UIC's very existence, role, and functions as a university, a school. Incidentally, Plaintiff was never under any legal obligation to plead in her Amended Complaint what UIC's specific role and functions are because those roles and functions are not an element of any of the two Causes of Actions brought forth by Plaintiff (Title II of the ADA and Rehab. Act).

"To establish a violation of Title II of the ADA, 'the plaintiff must prove that he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability.'" *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)); *see also* 42 U.S.C. § 12132. To establish a violation of the Rehabilitation Act, the

Plaintiff must demonstrate "that (1) he is a qualified person (2) with a disability and (3) the [Indiana] Department of Corrections denied him access to a program or activity because of his disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 476 (7th Cir. 2006); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997)). Footnote 3. Under the Rehabilitation Act, refusing to make a reasonable accommodation is tantamount to denying access. *Id.* (citing *Wis. Cmty. Servs. Inc.*, 465 F.3d at 747; *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985)).

Footnote 3: "It is not in dispute that the Indiana Department of Corrections receives federal funds. *See Wagoner*, 778 F.3d at 592 (citing *Jaros*, 684 F.3d at 671)." *Wilburn v. Indiana*, Case No. 3:17-cv-059 JD, 8 n.3 (N.D. Ind. Jun. 9, 2020)

*Wilburn v. Indiana*, Case No. 3:17-cv-059 JD, 7-8 (N.D. Ind. Jun. 9, 2020)

Therefore, this case is about UIC reaching the decision to reinstate Ms. Porch into the medical program with the non-negotiable condition that she take and pass Step 1 of the USMLE by April 6 of 2019. However, UIC - who was perfectly aware that Ms. Porch required accommodations for the exam and that the process to request accommodations takes a full six-months - communicated its decision as well as the non-negotiable STEP 1 exam condition to Ms. Porch only on **_October 4, 2018_**. Which already made it impossible for Ms. Porch to meet the 6 months requirement for requesting accommodations. In addition, when Ms. Porch requested assistance with the process of requesting accommodations, UIC did not dignify her with an

answer until ***early November of 2018***, causing Ms. Porch to waste additional precious time she could have used to prepare to try to take the exam without the accommodations.

To state this in other words, concisely: this case is about UIC ***negligent and/or intentionally tardy communications*** which made it impossible for Ms. Porch ***to meet the 6 months requirement for processing her request for accommodation.***

To clarify this even more: there is never any guarantee that once a request for accommodation is processed by UIC, that request is eventually granted by the NMBE. This last clarification is necessary to underscore the difference between liabilities imputable to UIC and liabilities imputable to the NMBE. There is nothing that Plaintiff can hold NMBE responsible for because NMBE never had anything to do with UIC tardy communications.

The tardy communications have nothing to do with the NMBE and have everything to do with UIC. It is axiomatic that UIC and UIC only had control over those tardy communications and over the timing of those communications. This is the reason why Plaintiff never named NMBE as a defendant. Plaintiff never named the NMBE as a defendant because the torts Plaintiff suffered have nothing to do with the NMBE. *UIC's acts and omissions constitute the torts Plaintiff complains about.*

Plaintiff admits that the original Complaint was confusing in this respect and therefore Honorable Judge Dow's confusion was understandable, but the Amended Complaint corrected the confusion, very clearly, so it was error for this Court to adopt Honorable Judge Dow's characterization of the case and import that characterization into its Order of December 20, 2022.

11

That is because the Amended Complaint and not the original Complaint is the subject matter of the Motion for Leave to File an Amended Complaint.

Furthermore, the Amended Complaint, not the original Complaint, not the redline, and not the titles of Plaintiff's Reply to Defendant's Response to the Motion for Leave to File the Amended Complaint- which the Court quoted in its Order -  is what this Court should have read and ruled upon when reaching a decision on Plaintiff's Motion for Leave to File an Amended Complaint.

Instead, a careful analysis of this Court's Order reveals that whoever wrote it, possibly not Your Honor who, being as busy as he is, may have simply signed the Order:

a)  completely ignored the one, solid pleading that was the subject matter of the Motion for Leave to File an Amended Complaint, - the Amended Complaint  itself - ; and

b)  cherry-picked bits and bytes from non-essential and/or secondary pleadings, with the specific intent to put together an order that only had the appearance of a legal order - without having the substance of a legal order - and an order that matched the alternative view created ab initio by the Defendant that NMBE and not UIC is responsible for the torts suffered by Plaintiff.

Therefore, to the extent that this very busy Court might have relied on a clerk to write the Order or used a Proposed Order written by counsel for the Defendant as a basis for its ruling, Plaintiff, by means of this Motion, notifies the Court that the Order is saturated with manifest errors of facts and law and will may well be reversed on appeal.

12

Plaintiff starts the analysis from the very basics: does the Amended Complaint correctly and sufficiently allege the necessary facts? Yes, it does. The Amended Complaint alleges both the facts necessary to explain what UIC's tortious conduct consisted of – *and* – the facts necessary to meet the elements of the COAs. (*See Wilburn, supra,* a 7th circuit case).

Paragraph 8 of the Amended Complaint reads: "At all relevant times, Plaintiff was a student at University of Illinois at Chicago School of Medicine registered with the University to receive accommodations under the ADA." Therefore, paragraph 8 establishes the first element of the COAs: that Ms. Porch is/was a qualified individual with disability.

Indirectly, paragraph 8 also establishes that UIC had either direct or constructive knowledge that Ms. Porch required accommodations but that is a 'bonus' because the COAs contemplate no scienter.

The accommodations boil down to additional time Ms. Porch needed to take an exam - any exam - both those exams she took in her program at UIC and the STEP exams. Paragraphs 10 and 11 of the Amended Complaint very clearly state the nature of Ms. Porch's disability and the type of accommodations she requires:

"10. Plaintiff suffers from multiple disabilities, including but not limited to, Attention-Deficit/Hyperactivity Disorder, learning disabilities and generalized anxiety disorder."

11. Plaintiff has been evaluated by clinicians and has, at the recommendation of her clinicians, needed extended time testing accommodations while in school."

13

It is axiomatic that if UIC had Ms. Porch registered as an ADA student, UIC was also aware of the nature of the accommodations she required. This is so because, if nothing else, UIC had already granted those accommodations to Ms. Porch during the exams she took in her medical program at UIC. Incidentally, and to restate, such "awareness" is not a "necessary" fact that Plaintiff had to plead in the Amended Complaint because such "awareness" is not an element of the COAs. The discrimination Plaintiff complains of stands on its own simply because it happened. The elements of the COAs do not include any scienter. (*See Wilburn, supra,* a 7th circuit case).

Paragraph 13 through 19 of the Amended Complaint read:

13. On October 4, 2018, School of the Medicine/University officials sent a letter to Plaintiff notifying her that she was required to take and pass United States Medical Licensing Examination ("USMLE") Step 1 by April 6, 2019.

14. The exam was actually scheduled for March 2019, but the letter did not inform Plaintiff that the Exam was scheduled for March 2019.

15. In addition, neither the letter, nor any University officials, had informed Plaintiff that the request for accommodations during the exam required six full months to be processed.

16. Plaintiff tendered a letter to begin the request for accommodations on October 5, 2018, asking for instructions on beginning the process to apply for accommodations.

14

17. Having received no response from the University and its officials, Plaintiff inquired again for the instructions on October 9, 2018.

18. Having received no response from the University and its officials, Plaintiff then inquired a third time for the instructions on October 23, 2018.

19. Finally, Plaintiff was allowed to submit the Medical Student Disability and Accommodations documentation on November 2, 2018.

Paragraph 13 through 19 very clearly establish what the violations – and discrimination – consisted of: the request for USMLE's accommodations takes 6 months to process - (Plaintiff even included the UIC's policy as exhibit to the Amended Complaint) - but UIC informed Ms. Porch of the non-negotiable condition to take and pass the March 2019 STEP 1 exam **on October 4, 2018.** UIC's letter did not include the date of the exam and did not clarify that Ms. Porch was already out of time to apply for accommodations. Plaintiff would have argued to a jury that the omissions were deliberate and a clear indication of bad faith.

Paragraph 13 through 19 satisfy the second and third elements of the COAs already: that UIC, not NMBE, denied Plaintiff access "to a program or activity on account of her disability". *Wilburn, supra*, clarifies that "Under the Rehabilitation Act, refusing to make a reasonable accommodation is tantamount to denying access." The accommodation that Ms. Porch was denied is not the additional time to take the exam (that is just a consequence of UIC's tortious conduct). The accommodation that Ms. Porch was denied is the accommodation that UIC was supposed to provide her with: ***timely assistance with the request for accommodation***. That is squarely a type of assistance that only UIC and not NMBE can and was supposed to provide to

15

Ms. Porch but the UIC's tardy letter of October 4, 2018, made it impossible for Ms. Porch to obtain that timely assistance. The dates in paragraph 13 through 19 make this case. Those tardy communications are the subject matter of this litigation and the basis of UIC's liability. There is nothing missing from the Amended Complaint in terms of facts that support the COAs.

In fact, the Amended Complaint elaborates even more and includes more detailed facts on the violations, in paragraphs 20 through 30, which read (italics and bold font added):

20. The documentation submitted in support of Plaintiff's request for accommodations included the following: Letters from Porch's psychologist, psychiatrist and her family practitioner, all detailing her medical condition and advising that she required extra time to complete the examination due to her medical condition.

21. Said documentation substantially complies *with the Defendants' written policy regarding requests for disability testing accommodations*.

22. By way of letter addressed to the *UIC Office of Access and Equity ("OAE")* dated November 2, 2018, Plaintiff requested testing accommodations for the USMLE Step 1 <u>to be administered in March of 2019.</u>

23. *The OAE never issued a response to Plaintiff's request for accommodations*.

24. Plaintiff then contacted Mr. Urosev, Dean of Academic Affairs, and Dr. Marth Halsey, Academic Specialist, requesting assistance with the NBME Medical Testing Accommodations.

*25.* *It was only then that Defendants Urosev and Defendant Halsey, notified Plaintiff that the request for accommodations requires six full months to be processed and,* **since the college had only granted Plaintiff five months to take the exam, there was not enough time to pursue the accommodations that Plaintiff required to succeed on the examination.**

26. Plaintiff was then advised to study hard and do the best she could on the NBME Medical test.

*27. The College of Medicine through Dean Curry was aware of Plaintiff's need for accommodations and had advised Plaintiff that she could and would receive assistance in requesting the accommodations.*

*28. The College of Medicine and its officials was also aware that the accommodations process required six full months for the completion and granting of the accommodations.*

**29.** *Nevertheless,* **the College of Medicine and its officials granted Plaintiff only five months to take and pass the test.**

*30. Subsequent to the Defendant's second refusal to accommodate Plaintiff's disabilities, Plaintiff's medical school informed her that she could not advance in its M.D. degree program without taking and passing USMLE Step 1.*

Obviously, "to accommodate Plaintiff's disabilities", in the context of the whole Amended Complaint, means granting her the 6 months required to apply for the disability accommodations with the USMLE and assisting her with the application.

Therefore, the Amended Complaint clearly states what tortious conduct UIC stands accused of and satisfies all the elements of the COAs.

The NMBE is not responsible for the discrimination committed by Defendant UIC and Plaintiff correctly omitted to name the NMBE as a Defendant.

## IV.    The inclusion of individual defendants was necessary and required by law.

At the bottom of page 6 of its Order, this Court wrote: "Adding UIC officials as defendants couldn't solve the problem. UIC is already here, so adding individuals from UIC in their official capacities does not change anything. UIC is the wrong entity. And suing officials from the wrong entity is still wrong." (*Id.* at p. 6).

Very respectfully, the implications of this comment are chilling. The very comment alone underscores the magnitude of the Court's mistake as well as the grave disservice this Court has done to Plaintiff.

The Amended Complaint contains two footnote citations to seminal cases that address fundamental topics in this specific area of litigation, violations of Title II ADA and Rehabilitation Act. These two topics are: 1) immunity under the 11th Amendment of the United States Constitution and 2) the defense of Statute of Limitations which is unavailable and defeated when the violations of federal rights are ongoing.

18

Plaintiff inserted footnote 2 in the title of Count I, right next to the sentence:

"(**Against University Officials in their official capacities)".** The note reads (italics and bold font added):

> "Doe also seeks injunctive relief against the individual defendants in their official capacities, including reinstatement to the College of Medicine and the Medical Scholars Program, transfer to the College of Medicine's Chicago campus, an opportunity to retake his Clinical Laboratory Studies course, and a prohibition on future violations of his rights under the ADA. Compl. pp. 139-40. Under the rule announced in *Ex Parte Young,* 209 U.S. 123 (1908), ***plaintiffs may sue state officials in their official capacities for prospective relief to enjoin ongoing violations of their federal rights, notwithstanding the state's Eleventh Amendment immunity.*** *See, e.g., Bruggeman,* 324 F.3d at 912. *See Doe v. Board of Trustees of University of Illinois*, 429 F. Supp. 2d 930, 940 n.2 (N.D. Ill. 2006)"

Plaintiff inserted footnote 3 in the title of the Count II, right next to the sentence:

"(**Against the University of Illinois at Chicago and School of Medicine)".** The note reads:

> "***It is at least conceivable that Doe may be able to advance a claim against the University under section 504 of the Rehabilitation Act. <u>29 U.S.C. § 704(a).</u> Because Congress enacted that statute pursuant to the Constitution's Spending Clause, it could and did require states to waive their Eleventh Amendment immunity as a condition of receiving federal financial assistance***. *See* <u>42 U.S.C.</u>

§ 2000d-7(a)(1). As a result, the Eleventh Amendment does not immunize the states from lawsuits under the Rehabilitation Act. *See Stanley v. Litscher,*213 F.3d 340, 344 (7th Cir. 2000). Because, however, Doe has not alleged that the University receives federal financial assistance for the College of Medicine, the Court cannot assess at this juncture whether he can assert a Rehabilitation Act claim in this case. *Doe v. Board of Trustees of University of Illinois*, 429 F. Supp. 2d 930, 940 n.2 (N.D. Ill. 2006)"

Plaintiff included footnotes 2 and 3 in the Amended Complaint not only to clarify why Count I is brought against the individual defendants and Count II is brought against UIC but to also address concerns that Honorable Judge Dow had raised in his Order of August 3, 2022, and to indicate to the Defendant that raising the immunity defense, again, would have been futile because there are ways a Plaintiff can plead around the immunity and Plaintiff had done just that in her Amended Complaint.

Pursuant to the case law cited above, bringing the Title II ADA claim against the individual defendants is how Ms. Porch defeats the immunity defense for Title II, and pleading the fact that UIC receives federal funds – which Plaintiff did in paragraph 9 of the Amended Complaint, underscored in the original and with Ex A. University Financial Report in support of the assertion - is how Ms. Porch defeats the immunity defense to the Rehab. Act Claim. The argument about SOL and ongoing violations is self-explanatory, hopefully.

Therefore, the Amended Complaint not only corrects all the errors in the original Complaint, it also addresses the concerns raised by Honorable Judge Dow in his Order of August

3, 2022, and – furthermore – the Amended Complaint shows the right way to sue State Universities and defeat their immunity defenses, an easy model to follow for every Plaintiff who does not know how to plead around the immunity defense (a good policy reason to grant the Leave to File such Complaint, if anything).

However, the comment at the bottom of page 6 of this Court's Order not only proves without the shadow of a doubt that the Court based its ruling on an inaccurate review of the facts of the case but – very unfortunately and very sadly- it also proves that this Court misread the case law that governs Title II ADA and Rehabilitation Act violation claims.

This particular mistake of law that the Court made, where the Court so evidently missed the legal reason for including individual defendants in the Amended Complaint, has nothing to do with a redline that did not capture the notes or the salient portions of the Amended Complaint.

As a Court sitting in judgment on a case that involves violations of Title II ADA and of the Rehabilitation Act, this Court should have recognized the reason why Plaintiff included individual defendants independently, without even reading the Amended Complaint. But this Court did not albeit, perhaps unintentionally, recognize that legal reason. In fact, the Court went even further than just failing to recognize the legal reason for naming individual defendants in the Amended Complaint: the Order wildly twists Plaintiff's legally sound choice to name individual defendants into yet another baseless accusation for denying the Leave to File the Amended Complaint.

Very respectfully, it is already extremely serious that this Court did not recognize the legally valid reason for including individual defendants in the Amended Complaint but -  beyond

21

that - the fact that this Court did not even recognize the need for IT to do adequate research on the topic before issuing a ruling - and - the even more astonishing fact that the Court launched into an underserved attack against Plaintiff for simply following the law in the matters at hand, is disconcerting to say the least.

This Court presides over cases of such complexity. Any litigant, including Plaintiff, is entitled to a presiding officer who knows the law that governs the proceedings before the Court. It goes without saying that the problem of a Court that lacks working knowledge of the law that governs the cases the Court presides over is even more acute when that Court denies with prejudice a Plaintiff's Motion for Leave to File an Amended Complaint while at the same time the Order denying the Leave shows a disconcerting lack of familiarity with the governing law as well as disregard for the Court's need to educate itself in the law before launching in baseless attacks against a litigant.

If this Court had just even taken the time to carefully read Judge Dow's Order, or the Amended Complaint and the footnotes, for that matter, the reason for the inclusion of the individual defendants would have become apparent.

But apparently for whatever reason, the Court did not. Instead, the record shows that this Court summarily skimmed through the filings of the case to cherry pick – in the shortest time possible - whatever would have been useful to put together an Order against Plaintiff with a minimum appearance of legality. The manifest errors of facts and law disseminated in the Order indicate as much.

<u>With all due and maximum respect</u>, - irrespective of whether this Court or someone else on behalf of this busy Court wrote the Order - this is unacceptable, and unfair, and this is the main reason why an honest Court of Appeal should not have a second of hesitation in reversing this Court's ruling.

**V.     The standard for Motions for Leave to File an Amended Complaint.**

"[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). We will overturn a denial of a motion for leave to amend a complaint only if the district court "abused its discretion by refusing to grant the leave without any justifying reason." *Id.; see also J.D. Marshall Int'l Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991). Federal Rule of Civil Procedure 15(a) provides that if a party is not entitled to amend a pleading as a matter of course, it may amend "with the opposing party's written consent or the court's leave." The court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002).

*Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008)

With its order of December 20, 2022, this Court has denied Plaintiff Leave to File the Amended Complaint because the Court held the amendments futile.

However, this Motion proves that the amendments were not futile at all and instead they cured the shortcomings of the original Complaint. This Motion also provides an accurate explanation of how and why the Court made manifest errors of both facts and law in its Order.

"In general terms, a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied. *Corporate Assets,* 368 F.3d at 767 (citing *United States v. Jain,* 174 F.3d 892, 899 (7th Cir. 1999); *Salgado by Salgado v. General Motors Corp.,* 150 F.3d 735, 739 n. 4 (7th Cir. 1998))." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004).

Here, Plaintiff has shown that the Court's Order of December 20, 2022, is premised on incorrect legal principles and clearly erroneous legal findings. Furthermore, the record, the actual pleadings, contain no evidence on which the Court rationally could have relied. Ipso facto, by operation of the law, this Court abused its discretion when it denied Plaintiff's Motion for Leave to File an Amended Complaint.

The decision of this Court cannot stand; an honest Court of Appeal would reverse it; but before appealing the decision, Plaintiff respectfully asks this Court to alter or amend its judgment pursuant to Rule 59(e) and the evidence this Motion refers to and to grant Plaintiff leave to file her Amended Complaint.

**VI.    The reference to Plaintiff's Reply in the Court's Order of December 20, 2022, shows that this Court was aware of the exact and true allegations brought forth by Plaintiff. The decision to ignore them was deliberate.**

In its Order of December 20, 2022, this Court specifically discussed a passage included in Plaintiff's Reply to Defendant's premature Motion to Dismiss. In fact, this Court even quoted that passage in its Order of Dec. 20, 2022.

Specifically, the Court wrote:

> "Finally, Porch asserts in her reply brief (which isn't a fertile ground for new arguments, so the argument is waived) that UIC : "instructs and requires the students with disabilities to go through [it] when they apply for the USMLE accommodations." *See* Pl.'s Reply to Mtn. for Leave to File Am. Cplt., at 3 (Dockt. No. [21]) (emphasis removed). However, this allegation is noticeably absent from the proposed amended complaint. The proposed pleading is what matters, not the gloss in a brief. And in any event, the amended complaint does not allege UIC had the authority to grant a disability accommodation." (*Id.* at p. 7).

First, as Plaintiff already discussed in prong II of this Motion, the allegation the Court cherry-picked is nowhere part of the elements of the COAs. (*See Wilburn, supra,* a 7th circuit case). Therefore, contrary to this Court's comment, Plaintiff had no need to and was under no obligation to include the specific allegations in the Complaint.

Second, the passage is a sentence extrapolated from the title of one of the sections of Plaintiff's Reply. The whole title reads (bold fonts in original):

> **"Plaintiff alleges that Defendant UIC and its employees violated her rights under the ADA and the Rehabilitation Act when they failed to assist her in the process to apply for USMLE accommodations. UIC <u>instructs</u> and <u>requires</u> the students with disabilities to go through them when they apply for the USMLE accommodations. UIC made it a condition for reinstatement that Plaintiff pass the March 2019 USMLE STEP 1 test. Furthermore, the USMLE program requires any university to assist USMLE for verification purposes."**

The first sentence of the title makes Plaintiff's theory of the case and allegations <u>extremely clear</u>. Therefore, even if the Court incorrectly decided to limit itself to the reading of the inaccurate redline, as opposed to reading the whole Amended Complaint, it is unclear how the Court could have remained confused about the exact allegations Plaintiff brought against UIC when the Court left proof in its own Order that the Court, at the very least, read this particular title of Plaintiff's Reply, the first sentence of which reflects the very core of Plaintiff's case.

To reiterate again, the first sentence reads:" **Plaintiff alleges that Defendant UIC and its employees violated her rights under the ADA and the Rehabilitation Act when they failed to assist her in the process to apply for USMLE accommodations."** This sentence is a summary of the facts pleaded in the Amended Complaint, therefore there is no fact relevant to the elements of the COAs that Plaintiff has omitted or is "noticeably absent" from the Complaint.

This selective comment the Court included in its Order and the evidence on the record contradict the assumption that an incorrect redline may have caused the Court's confusion and, instead, support the inference that the Court deliberately ignored very relevant portions of the record directly in front of the Court.

"A motion for leave to file an amended complaint is addressed to the sound discretion of the Court and *must be decided upon the facts and circumstances of each particular case*." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Forman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Ricciuti v. Voltare Tubes, Inc.,* 277 F.2d 809 (2nd Cir. 1960); *Hall v. National Supply Co.,* 270 F.2d 379 (5th Cir. 1959). *Johnson v. Sales Consultants, Inc.*, 61 F.R.D. 369, 371 (N.D. Ill. 1973). (Emphasis and underscoring added).

"The sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a *careful* exercise of judicial discretion." *Webber* , 721 F.2d at 1069 (quoting *Durgin v. Graham* , 372 F.2d 130, 131 (5th Cir. 1967) )." *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931 (7th Cir. 2018). (Emphasis in original ).

"The liberal pleading policy in the [federal rules] prevents dismissal of a meritorious action for purely formal or technical reasons." *Murphy v. White Hen Pantry Co*., 691 F.2d 350, 353 (7th Cir. 1982).

Here, this Motion shows that ultimately this Court denied Plaintiff's Motion for Leave to File an Amended Complaint for non-existing reasons rather than purely formal or technical reasons. In conclusion the Order is not only ridden with manifest errors of facts and of law. The content

of the Order itself shows deliberate indifference to the relevant record and evidence before the Court, record and evidence which clearly indicate the reasons why UIC and not NMBE is the correct defendant in this case.

## CONCLUSION

WHEREFORE, for all the reasons discussed above, Plaintiff respectfully requests that this Court alters and or amends its ruling of December 20, 2022, and grants Plaintiff's Leave to File the Amended Complaint.

Respectfully submitted,

EBONE PORCH

By:     s/ Calvita J. Frederick
    Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001
Calvita.Frederick@att.net

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 14, 2023, the foregoing *Rule 59(e) Motion* was filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.


<u>s/ Calvita J. Frederick</u>
Attorney for Plaintiff
Calvita J. Frederick